UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CV-81183-RLR

REGAN BEAGLE, and
SHAWN BEAGLE,

        Plaintiffs,

vs.

FLAGSTAR BANK, FSB,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS COMPLAINT [ECF No. 12]

Plaintiffs own residential real property in Boca Raton, Florida. ¶8.[1] Defendant services the mortgage loan on the property. ¶10. In or about February 2022, the parties agreed to loss mitigation in the form of a partial claim. ¶¶16-18. Plaintiffs made a payment on or about March 7, 2022, in compliance with the partial claim agreement. ¶19. Nevertheless, Defendant filed a foreclosure lawsuit in August 2022. ¶21.

In or about March 2023, Plaintiffs' lawyer sent a letter to Defendant requesting information about the loan (the "Request"). ECF No. 1-1. It asked, in part, "Is the partial claim referenced above in effect? If so, what was the next payment due date

---

[1] Unless otherwise noted, all paragraph numbers correspond to the paragraphs in the Complaint. ECF No. 1.

and was that payment made?" *Id.* at 1.

Defendant received the Request on or about March 7, 2023. ¶28. Defendant sent a written response on April 17, 2023 ("the Response"). ¶30. Among the materials sent to Plaintiffs was a letter from February 2022 saying that Defendant had not received the partial claim documents or the proper payment. ¶¶31-32. Plaintiffs claim that the Response did not fully address the Request. ¶¶34-35.

On July 18, 2023, Plaintiffs sent a notice-and-cure letter to Defendant. ¶36. Defendant received the notice-and-cure letter on July 25, 2023. ¶38. The notice-and-cure letter gave Defendant "an additional 10 days to provide the requested information before we sue you." ECF No. 1-2 at 2.

This lawsuit was filed on August 25, 2023. ECF No. 1. Plaintiffs allege that Defendant did not comply with the Real Estate Settlement Procedures Act ("RESPA") and its implementing regulations. *See* 12 U.S.C. §2605(k) and 12 C.F.R. §1024.36(d) ("Regulation X"). They say they have been injured in fact by having to pay for copying and postage to send the notice-and-cure letter. ¶¶57, 60. They say they have suffered emotional distress damages and have had to waste time consulting with an attorney. *Id.*

Defendant moves to dismiss the complaint for lack of Article III standing, lack of ripeness, and failure to state a claim upon which relief can be granted. ECF No. 12.

## LEGAL PRINCIPLES

A. *Standing*

The party invoking the jurisdiction of a federal court bears the burden of

2

proving it exists at each stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because lack of standing deprives the court of its constitutional power to adjudicate the parties' dispute, it can be raised by either party, or "by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). For this same reason, a district court is required to satisfy itself of a party's standing before proceeding to consider the merits of the claims. *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020); *see also Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (The Court may not address the merits of a controversy without first establishing subject matter jurisdiction.).

There are three elements to establish standing. There must be an injury-in-fact (an invasion of an interest that is *both* concrete and particularized, and actual or imminent), a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood (not merely speculation) that a favorable judgement will redress the plaintiff's injury. *Gardner*, *supra*, at 1338 (quoting *Lujan*, 504 U.S. at 560-61). A plaintiff must satisfy all three elements to establish standing. *Id.* "Article III standing must be determined as of the time that the plaintiff's complaint is filed." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019). In determining whether there is an Article III case or controversy, courts "look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).

B. *Ripeness*

As the Eleventh Circuit has explained:

[E]ven when a claim meets the case-or-controversy requirement's constitutional demands, such as standing, we also recognize important prudential limitations on the kinds of cases that a court has power to decide. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1338-39 (11th Cir. 2005). Those prudential concerns "counsel judicial restraint" and prevent courts from "rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Id.* at 1339. Based on these interests, courts decide only cases that are ripe for their review. We determine ripeness, which addresses both constitutional and prudential concerns, by evaluating "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Advert. Co.*, 402 F.3d at 1339 (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

Concerning fitness for judicial decision, we ask whether the parties raise an issue that we can decide without further factual development and whether the institutional interests of the court and agency favor immediate review. *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010); *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995). As for "hardship," litigants must show that they are "forced to choose between foregoing lawful activity and risking substantial legal sanctions." *Cheffer*, 55 F.3d at 1524 (citing *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)); *see also Elend*, 471 F.3d at 1211. If a claim is fit for judicial decision, that is end of the inquiry, and the matter is ripe, given that the absence of a "hardship" "cannot tip the balance against judicial review" under those circumstances. *See Harrell*, 608 F.3d at 1259 (citation and internal quotation marks omitted).

*Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379–80 (11th Cir. 2019).

Ripeness "can be affected by events occurring after the case is filed." *See, e.g., Yacht Club on the Intracoastal Condo. Ass'n v. Lexington Ins. Co.*, 509 Fed. Appx. 919, 922 (11th Cir. 2013).

C. *Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled

4

factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U. S. at 678 (citing *Twombly*, 550 U. S. at 570). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

5

> provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

With limited exceptions, the Court looks only to the allegations in the complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022) (J. Ruiz). The Court also may consider other documents whose authenticity is undisputed and which are central to the claims in this matter. *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005).

D. *RESPA*

RESPA imposes a statutory duty on a mortgage loan servicer to respond to certain Qualified Written Requests ("QWR") from a borrower about the servicing of their loan. In pertinent part, it states:

(e) **Duty of Loan Servicer to Respond to Borrower Inquiries**

(1) Notice of receipt of inquiry

**(A) In general.** If any servicer of a federally related mortgage loan

> receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
> **(B) Qualified written request.** For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > (i)  includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C.A. §2605(e). If the borrower submits a QWR, the servicer must respond within certain time limits. As relevant here, a "servicer" is "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. §1024.2. "Information 'related to loan servicing' includes 'information about the receipt of periodic payments or the amounts of such payments.'" *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (J. Bloom) (citations omitted). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3).

7

In addition to complying with Section 2605(e), mortgage loan servicers must also "comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. §2605(k)(1)(E). Regulation X is one such regulation. 12 C.F.R. §1024.36.

The first subsection of Regulation X says:

> A servicer shall comply with the requirements of this section for any written request for information ["RFI"] from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan. A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information. A request for a payoff balance need not be treated by the servicer as a request for information. A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

12 C.F.R. §1024.36(a). A later subsection defines the requirements for responding to an RFI made under subsection (a):

> (d) **Response to information request**–
>
> (1)   **Investigation and response requirements.** Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either:
>
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and

> provides contact information, including a telephone number, for further assistance.
>
> (2) **Time limits** –
>
> (i) **In general.** A servicer must comply with the requirements of paragraph (d)(1) of this section:
>
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
>
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.
>
> **(3) Extension of time limit.** For requests for information governed by the time limit set forth in paragraph (d)(2)(i)(B) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. A servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section.

Section 2605(f) of RESPA creates a private right of action for a mortgage borrower if a mortgage servicer fails to comply with "any provision of this section." 12 U.S.C. §2605(f). As relevant here, an individual borrower can recover "any actual damages to the borrower as a result of the failure [to comply]." 12 U.S.C. §2605(f)(1)(A).

## DISCUSSION

Plaintiffs have alleged a constitutionally-sufficient injury-in-fact. They allege a plausible claim that they had to incur postage and copying costs to send the notice-and-cure letter after Defendant's response to the RFI did not comply with RESPA.

9

Those costs are a sufficient injury for Article III standing. *See, e.g., Philistin v. Ocwen Loan Servicing, LLC*, No. 19-CIV-80048, 2019 WL 1474329, at *5 (S.D. Fla. Mar. 18, 2019) (J. Reinhart), *report and recommendation adopted,* No. 9:19-CV-80048, 2019 WL 1486855 (S.D. Fla. Apr. 4, 2019) (J. Rosenberg).

Plaintiffs' claims are ripe. Defendant says "[W]hen this lawsuit was filed, no RESPA claim could have been ripe." ECF No. 12 at 5. The rationale is that the response to the RFI was timely and the Complaint was filed before the time to respond to the notice-and-cure letter had expired. ECF No. 12 at 6. Neither of these facts makes the Plaintiffs' claims unripe. First, Plaintiffs say the response to the RFI was incomplete, not untimely. Second, they do not seek any relief based on alleged shortcomings in the response to the notice-and-cure letter.

Defendant next says that the Complaint fails to state a claim upon which relief can be granted because (1) Plaintiffs have not suffered damages, (2) the alleged deficiencies in the response to the Loan Information Request do not relate to the servicing of the loan, and (3) any problems with the Response have been cured.

As noted above, the Complaint plausibly alleges that the Plaintiffs incurred actual costs because they had to send the notice-and-cure letter. It also plausibly alleges that they suffered emotional trauma.

Plaintiffs concede that their Request was not a QWR. Nevertheless, they say that they can state a claim under RESPA even if the Request did not relate to the servicing of the loan, because Regulation X is broader than the statute. *Compare Maldonado v. Ocwen Loan Servicing, LLC*, No. 18-CIV-62037, 2018 WL 6427682 at

10

Case 9:23-cv-81183-RLR   Document 23   Entered on FLSD Docket 11/20/2023   Page 11 of 12

*4 (S.D. Fla. 2018) (J. Altonaga) *with Pollack v. Seterus, Inc.*, No. 17-60475-CV-RNS, 2017 WL 6343676 (S.D. Fla. Dec. 7, 2017) (J. Scola) and *Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV, 2019 WL 13202780, at *11 (S.D. Fla. June 19, 2019) (J. Martinez). I agree with, and adopt, the analysis in *Pollack* and *Lynch*. As Judge Martinez aptly put it, "[A]ll QWRs [under the statute] are RFIs [under the regulation] but not all RFIs are QWRs." *Lynch, supra,* at *11. Here, Plaintiffs made an RFI that is not a QWR.

Ultimately, Defendant says that its Response was compliant with RESPA and Regulation X. It says, "Specifically, Defendant provided a copy of a February 11, 2022 letter sent to Plaintiff notifying Plaintiff that the loss mitigation was closed because Defendant [']did not receive the fully executed modification documents . . . necessary to complete the modification.'" ECF No. 12 at 7-8 (ellipses in pleading). This argument is premature. At the 12(b)(6) phase, the sole question is whether a plaintiff has pled a plausible claim for relief, not whether that claim will ultimately be meritorious. Regardless, the February 11 letter was not appended to the Complaint. Rather, it was an exhibit to Defendant's Motion to Dismiss. Even if I consider it, viewed in the light most favorable to Plaintiffs, the Response does not fully address all the issues raised in the Request. Accordingly, Plaintiffs have plausibly alleged a claim for relief under RESPA.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss (ECF No. 12).

11

**NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and ORDERED** in Chambers this 20th day of November, 2023, at West Palm Beach in the Southern District of Florida.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE